# Grammes et al. *v.* Central Railroad Co. of New Jersey, Appellant.

*Common carrier—Carrier—Rules and regulations—Loss of goods —Act of Congress March 4, 1915, 38 Stat. 1196.*

1. A common carrier cannot complain of a shipper's failure to comply with its rules and regulations, if such failure is due to the act of the carrier or its servants.

2. Where articles shipped have been lost by reason of the failure of the carrier to comply with its own rules, it and not the shipper must suffer the loss.

3. Where some of the articles shipped are properly marked, as required by the rules and regulations of the carrier, and some are not, and all are lost in transit, the carrier will in any event be held liable for the loss of the packages which were properly marked.

4. Where a carrier alleges some of the packages shipped have been lost in transit because not properly marked, the burden of proof is upon it to show which were not so marked.

5. By the Act of Congress dated March 4, 1915, 38 Statutes at Large 1196, where a common carrier takes property in interstate commerce, and issues a through bill of lading therefor, it is liable to the shipper whether the loss occurs on its own line or on the line of a connecting carrier.

Argued January 31, 1921.   Appeal, No. 21, Jan. T., 1921, by defendant, from judgment of C. P. Lehigh Co., Oct. T., 1918, No. 93, on verdict for plaintiff, in case of Harry A. Grammes et al., trading as L. F. Grammes & Sons, v. Central R. R. Co. of New Jersey.   Before MOSCH-ZISKER, C. J., FRAZER, WALLING, SIMPSON and SCHAFFER, JJ.   Affirmed.

Assumpsit for nondelivery of 41 barrels of scrap brass. Before GROMAN, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $3,088.71.   Defendant appealed.

*Errors assigned* were, (1) refusal of binding instructions for defendant, (2) giving binding instructions for plaintiff, and (3) refusal of judgment for defendant n. o. v., quoting record.

*Geo. Aubrey,* of *Aubrey & Steckel,* with him *Walter C. Senger,* for appellant.—A common carrier was not ordinarily liable, at common law, except by express contract, for a loss occurring beyond its own line: Clyde v. Hubbard, 88 Pa. 358.

The contract of carriage expressly relieves the defendant from liability: Crane R. R. v. R. R., 248 Pa. 333, 338; Crane R. R. Co. v. Ry., 253 Pa. 246, 248.

Plaintiffs have not brought themselves within the provisions of the act and cannot recover in this action: Georgia, etc., R. R. v. Blish Mill. Co., 241 U. S. 190; Phillips v. G. T. W. Ry., 236 U. S. 662.

*Reuben J. Butz,* of *Butz & Rupp,* for appellees.—While the rule was early established in Pennsylvania that a limitation of the carrier's liability could be effected by the establishment of a contractual relationship between' the carrier and the shipper, yet it is just as true that the carrier has never been allowed to exempt itself from the

468 GRAMMES v. CENTRAL R. R. CO. OF N. J., Appel.

consequences of its own negligence or wilful act under any circumstances in the handling of the goods: Farnham v. R. R., 55 Pa. 53; Menner & Co. v. Canal Co., 7 Pa. Superior Ct. 135; Willock v. R. R., 166 Pa. 184.

The effect of the Carmack amendment was to hold the initial carrier "receiving property for transportation from a point in one state to a point in another state," as having contracted for through carriage to the point of destination, using the lines of its connecting carriers as its agents. The amendment took away from such initial carrier its former right to make a contract limiting its liability to loss or damage occurring on its own line, and thus relieved the shipping public of the burden theretofore imposed upon it of proving the particular carrier upon whose line the loss or damage occurred: Atlantic Coast Line R. v. Riverside Mills, 219 U. S. 186; Adams Express Co. v. Croninger, 226 U. S. 490; Cincinnati, New Orleans, etc., Ry. v. Rankin, 241 U. S. 318.

The burden of proof was on defendant under the circumstances of the case: Verner v. Sweitzer, 32 Pa. 208; Beckman & Johnson v. Shouser, 5 Rawle 178; Clark & Co. v. Spence, 10 Watts 335; American Express Co. v. Sands, 55 Pa. 140; Grogan v. Adams Express Co. 114 Pa. 523; Buck v. R. R., 150 Pa. 170; Trace v. R. R., 26 Pa. Superior Ct. 466.

If the failure to mark the packages was due to the fact that the car was moved by the defendant from the private siding of the plaintiffs before a proper opportunity was given to mark the barrels, then no question of default of the shipper can arise either at common law or under the Carmack amendment.

OPINION BY MR. JUSTICE SIMPSON, February 21, 1921:

By the Act of Congress dated June 18, 1910, 36 Statutes at Large, page 546, it is "made the duty of all common carriers......[engaged in interstate commerce] to establish, observe and enforce just and reasonable regulations and practices affecting......bills of lading, the

manner and method of presenting, marking, packing and delivering property for transportation......and all other matters relating to or connected with the receiving, handling, transporting, storing and delivery of property." Among the regulations adopted in accordance therewith, are these: "Each package, bundle or loose piece of freight [offered for transportation] must be plainly, legibly and durably marked......showing the name of only one consignee and only one station, town, city or state to which destined"; "The marks on bundles, packages or pieces must be compared with the shipping order or bill of lading, and corrections, if necessary, made by the consignor or his representative before receipt is signed"; and "Freight not [so] marked...... will not be accepted for transportation."

By the Act of Congress dated March 4, 1915, 38 Statutes at Large, 1196, it is provided: "That any common carrier, railroad or transportation company......receiving property for transportation from a point in one State or territory or the District of Columbia to a point in another State, territory [or the] District of Columbia, or from any point in the United States to a point in an adjacent foreign country, shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass within the United States or within an adjacent foreign country, when transported on a through bill of lading; and no contract, receipt, rule, regulation or other limitation of any character whatsoever, shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed."

On the trial it was proved that plaintiff loaded in a box car, placed by defendant on plaintiff's private siding at Allentown, Pennsylvania, 41 barrels of scrap brass to be transported to Waterbury, Connecticut, and received

a through bill of lading therefor. Plaintiff admitted the barrels were not all marked as required above, but the record does not disclose how many were and how many were not marked, the excuse for the failure to mark them all being because defendant "took it [the box car] away before I had a chance to mark the barrels." The bill of lading does not specify any markings as appearing on any of the barrels, yet defendant accepted the freight for transportation despite its regulation above quoted. The car thus loaded was taken by defendant over its railway to a point in the City of New York, where the brass was transferred to a car of the New York, New Haven & Hartford Railroad Company, for carriage by the latter company to the point of destination. It was not delivered there, but which of the railroad companies was in fault in this respect does not appear. At plaintiff's request a tracer was sent out by defendant, and the brass was located in the City of Boston; after which the defendant apparently did nothing, and the brass was sold, presumably as unclaimed freight, in order to recoup the New York, New Haven & Hartford Railroad Company for its freight charges thereagainst. The court below refused defendant's point for binding instructions, instructed the jury to find a verdict for plaintiff, later dismissed defendant's motion for judgment non obstante veredicto and entered judgment on the verdict, and defendant thereupon appealed, challenging only the rulings on these matters.

Had defendant observed its own regulations, and the loss been occasioned by plaintiff's failure to comply therewith, the point it now seeks to raise, viz, is a carrier responsible for a loss resulting from the shipper's failure to obey its rules? would have been up for consideration. Here, however, defendant by its haste prevented plaintiff from marking the freight as required, did not "observe" its own regulations,—as the Act of 1910, relied on (by it), requires it to do,—in that it received freight which was not all properly marked, and issued a

through bill of lading therefor which did not show the markings on the barrels; and yet seeks to escape the liability which the act of Congress imposes, though the fault was all its own. This of course it cannot do; and hence, since the assignments of error do not question the amount of the verdict, we need not consider the other points argued; though it may be said the maximum of escape from liability would, in any event, be the value of the brass in the unmarked barrels, and, though having the burden of proof on this point, defendant gave no evidence as to either the number or value.

The judgment of the court below is affirmed.